TODD ARNONE, ADMINISTRATOR (ESTATE OF
CRAIG M. ARNONE) *v.* CONNECTICUT LIGHT
AND POWER COMPANY ET AL.
(AC 24596)

Schaller, Harper and Peters, Js.

Argued February 17—officially released July 12, 2005

*Jack D. Miller,* with whom, on the brief, was *Lisa M. Gorham,* for the appellant (plaintiff).

*Robert J. Flanagan, Jr.,* for the appellee (defendant Edward Pagani, Jr.).

*Opinion*

HARPER, J. The plaintiff, Todd Arnone, the administrator of the estate of the decedent, Craig M. Arnone, appeals from the judgment of the trial court rendered on the granting of the motion for summary judgment

filed by the defendant Edward Pagani, Jr. On appeal, the plaintiff claims that the court improperly granted the motion for summary judgment because (1) a genuine issue of material fact existed as to whether Pagani's conduct was wilful and malicious under state law, (2) a genuine issue of material fact existed as to whether Pagani's conduct amounted to arbitrary excessiveness of governmental power in violation of the decedent's civil rights pursuant to the fourteenth amendment of the United States constitution and § 1983 of title 42 of the United States Code, and (3) the legal sufficiency of a complaint may not be adjudicated on a motion for summary judgment. We affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The Somers Probate Court appointed the plaintiff the administrator of the estate of Craig M. Arnone, who died in the course of fighting a fire while acting as a volunteer fireman with the Somers volunteer fire department on December 8, 1996. The plaintiff brought this action against the following defendants: Connecticut Light and Power Company (power company) and Northeast Utilities Service Company, the utilities providing electrical service to the area of Somers; the Tolland County Mutual Aid Fire Services, Inc., the entity performing volunteer firefighter dispatch services; the town of Somers; and Edward Pagani, Jr., the chief, at the time, of the Somers volunteer fire department (department). The town of Somers filed a motion for summary judgment as to the counts directed against it, and on March 22, 2002, the court granted the town's motion. On September 30, 2002, the plaintiff withdrew the complaint as to the counts alleged against the power company and Northeast Utilities Service Company. On September 11, 2003, the plaintiff withdrew the complaint as to the Tolland County Mutual Aid Fire Services, Inc. The complaint was disposed of thereby as to all

defendants except Pagani and the town of Somers. This appeal involves only Pagani, to whom we therefore refer in this opinion as the defendant.

The facts are largely undisputed. During the night of December 7 into the morning of December 8, 1996, a heavy snowfall blanketed Somers. Shortly after midnight on December 8, the defendant received a call that a wire was down and arcing in the vicinity of 879 Main Street in Somers. While on his way to the scene, he was notified that the house at 879 Main Street was burning. He called for a response from the department. Shortly after he arrived, there was a large electrical explosion on the premises. The wires continued to hum and crackle. The defendant contacted the dispatcher and requested that the dispatcher notify the power company to disconnect the power. He never received verification that the power company had disconnected the power. After the firefighters had arrived, there was a second explosion, after which the wires ceased humming and crackling, and all the lights in the neighborhood were dark. The defendant believed that the power was not operative at the premises at that time. He saw no reaction when snow fell on any of the wires in the area or when firefighters were brushed by a wire hanging by the front entrance.

Firefighters fought the fire, at least partly under the direction of the defendant, and brought it more or less under control. The firefighters entered and exited the house, ventilated the premises and tended to hot spots. No people had been inside the house at the time the fire began. The defendant heard another explosion as he was turning back toward his truck. The decedent, who was one of the volunteers who had responded to the fire, was lying on the ground. He had received a fatal infusion of current after contacting a wire hanging by the door.

The defendant previously had purchased a "hot stick," which was a device that could detect the presence of electrical current. The hot stick was in a truck at the scene, but was not used. The hot stick had never been used by the department, and its use had never been approved. No firefighters had been trained in the use of the device.

The defendant filed a motion for summary judgment as to the two counts of the complaint directed against him. Count five alleged that the defendant had engaged in wilful and malicious conduct in, among other things, sending firefighters into a house with a downed power line, which he knew or should have known was energized. Count six alleged that the defendant was acting under color of state law and had deprived the decedent of his constitutional rights under the fourteenth amendment to the United States constitution.

The plaintiff filed an objection to the defendant's motion for summary judgment, claiming that alleged contested facts showed that the defendant's conduct was wilful and malicious and amounted to an arbitrary exercise of governmental powers. Additionally, the plaintiff claimed that the defendant's motion for summary judgment attacked the complaint's legal sufficiency, which is improperly raised in a motion for summary judgment.

Before ruling on the motion for summary judgment pertaining to the counts directed against the defendant, the court held a hearing on June 26, 2001. On September 4, 2001, the court granted the defendant's motion for summary judgment, as a matter of law, after determining that the plaintiff had failed to allege facts that supported the proposition that the defendant's conduct was wilful and malicious and that the defendant's conduct did not amount to an arbitrary exercise of governmental power.

The plaintiff filed this appeal from the judgment of the court rendered on its granting of summary judgment in favor of the defendant and the town. The town filed a motion to dismiss the appeal on the ground that it was untimely filed. The defendant also filed a motion to dismiss the appeal because his attorney did not receive certain appellate documents. On February 18, 2004, this court dismissed the plaintiff's appeal as to the town of Somers only.

The standard for appellate review of a court's decision to grant a motion for summary judgment is well established. Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A material fact is a fact that will make a difference in the result of the case. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Fernandez* v. *Standard Fire Ins. Co.*, 44 Conn. App. 220, 222, 688 A.2d 349 (1997).

"The facts at issue [in the context of summary judgment] are those alleged in the pleadings." (Internal quotation marks omitted.) *Mountaindale Condominium Assn., Inc.* v. *Zappone*, 59 Conn. App. 311, 315, 757 A.2d 608, cert. denied, 254 Conn. 947, 762 A.2d 903 (2000).

"The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." (Internal quotation marks omitted.) *Marchetti* v. *Ramirez*, 40 Conn. App. 740, 747, 673 A.2d 567 (1996), aff'd, 240 Conn. 49, 688 A.2d 1325 (1997).

"Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citation omitted; internal quotation marks omitted.) *Greenwich Hospital* v. *Gavin*, 265 Conn. 511, 519, 829 A.2d 810 (2003).

I

We first address whether the court improperly concluded, as a matter of law, that no genuine issue of material fact existed as to the defendant's conduct on December 8, 1996, because the defendant's conduct was not wilful and malicious. We conclude that the court properly granted the motion.

The plaintiff claims that the decedent's injuries and death were caused by the wilful and malicious wrongdoing of the defendant. In analyzing that claim, the court stated that "[i]t incorporates by reference allegations from a prior count in which the underlying facts are alleged, and claims that the injuries and death of [the decedent] were caused by the 'wilful and malicious conduct' of [the defendant] by sending firefighters into the house with a downed power line [that] he knew or should have known was energized, by failing to confirm that the line was [not energized] prior to sending firefighters into the building, by failing to use the hot stick, by failing to wait for [the power company] to arrive and turn off the power, by failing to contact [the power company] directly, by ordering men to fight the fire

even though he had been advised that the line was energized and by failing to tell the volunteers that the line remained energized."

The court clearly set forth the basis of its analysis of the motion for summary judgment in addressing this claim. General Statutes § 7-308 (b) provides in relevant part that "[i]f a fireman or, in the case of his death, his dependent, has a right to benefits or compensation . . . by reason of injury or death caused by the negligence or wrong of a fellow employee while both employees are engaged in the scope of their employment for such municipality, such fireman or, in the case of his death, his dependent, shall have no cause of action against such fellow employee to recover damages for such injury or death unless such wrong was wilful and malicious. . . ." Section 7-308 bars actions brought by one employee against another unless the injury is caused by wilful and malicious conduct. The court explained that the issue to be decided was "whether the materials submitted in connection with the motion for summary judgment remove any genuine issue of material fact as to the element of 'wilful and malicious conduct.' If there is no genuine issue, and a reasonable trier of fact could not find on the evidence presented that [the defendant's] conduct was wilful and malicious, then summary judgment should be granted. If there is a genuine issue, with reasonable inferences drawn in favor of the plaintiff, then the motion should be denied as to the fifth count."

Our Supreme Court has held that "the statutory exception of wilful or malicious conduct requires a showing of an actual intent to injure the plaintiff. To bypass the exclusivity of the [Workers' Compensation Act, General Statutes § 31-275 et seq.], the intentional or deliberate act or conduct alleged must have been designed to cause the injury that resulted. Such a concept is nothing new to our jurisprudence. . . . A wilful

and malicious injury is one inflicted intentionally without just cause or excuse. It does not necessarily involve the ill will or malevolence shown in express malice. Nor is it sufficient to constitute such an injury that the act resulting in the injury was intentional in the sense that it was the voluntary action of the person involved. Not only the action producing the injury but the resulting injury must be intentional. . . . A wilful or malicious injury is one caused by design. Wilfulness and malice alike import intent. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . The intentional injury aspect may be satisfied if the resultant bodily harm was the direct and natural consequence of the intended act." (Citations omitted; internal quotation marks omitted.) *Nolan* v. *Borkowski*, 206 Conn. 495, 501, 538 A.2d 1031 (1988).

The plaintiff argues that the term wilful has become synonymous with the term reckless. Our Supreme Court has explained that "[w]hile we have attempted to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing. The result is that willful, wanton, or reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. . . . It is at least clear . . . that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention . . . ." (Internal quotation marks omitted.) *Dubay* v. *Irish*, 207 Conn. 518, 533, 542 A.2d 711 (1988); see also *Elliott* v. *Waterbury*, 245 Conn. 385, 415, 715 A.2d 27 (1998).

Our Supreme Court has consistently defined the term recklessness. "Recklessness is a state of consciousness

with reference to the consequences of one's acts. . . . . It is more than negligence, more than gross negligence. . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . Wanton misconduct is reckless misconduct. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of . . . action. . . . Wilful misconduct has been defined as intentional conduct designed to injure for which there is no just cause or excuse. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the resulting injury also must be intentional." (Citations omitted; internal quotation marks omitted.) *Dubay* v. *Irish*, supra, 207 Conn. 532–33; see also *Markey* v. *Santangelo*, 195 Conn. 76, 78, 485 A.2d 1305 (1985).

The court in its memorandum of decision properly noted that the "wilful and malicious" standard is difficult to meet in emergency situations. For example, this court has held that the discharge of a weapon by a police officer in the course of duty, which unintentionally, severely injured a fellow officer, was not wilful or malicious conduct that fell within the exception to the workers' compensation exclusive remedy provision as a matter of law. *Melanson* v. *West Hartford*, 61 Conn. App. 683, 691–93, 767 A.2d 764, cert. denied, 256 Conn. 904, 772 A.2d 595 (2001). Additionally, in *Ramos* v. *Branford*, 63 Conn. App. 671, 684, 778 A.2d 972 (2001), this court held that even a reckless failure to abide by regulations and safety standards was not the equivalent of a conscious and deliberate attempt to injure.

Therefore, even if wilful has become synonymous with reckless, the defendant's actions do not rise to the level of recklessness. The plaintiff conceded, during the proceedings that took place on June 26, 2001, that he had "never suggested in [his] complaint or anywhere in [his] briefs that [the defendant] intended to injure anybody. [The plaintiff] is not pleading intent." It follows that the injury resulting from the defendant's actions was not intentionally inflicted. The evidence indicates that the defendant believed that there were no live wires at the premises and that he sent firefighters into the building in an attempt to save the structure. The defendant instructed the dispatcher to call the power company and requested that the power be disconnected, and he observed no evidence that the power remained active. Although he did not receive confirmation that the power was in fact disconnected and did not use the "hot stick" to verify that the power was disconnected, there are no facts alleged that indicate that the defendant made those decisions with the intent to injure any of the firefighters at the scene, including the decedent. The intent to injure cannot be implied from the defendant's conduct or from those circumstances.

Additionally, although it is arguable that the term wilful may now be construed as synonymous with recklessness, there is no authority that suggests that maliciousness and recklessness have likewise become synonymous. General Statutes § 7-308 (b) provides that the plaintiff shall have no cause of action against such fellow employee to recover damages for such injury or death unless such wrong was wilful and malicious. Regardless of whether the defendant's actions are construed to be wilful, there is no way that a reasonable trier of fact could construe the defendant's acts to be malicious. For the defendant's actions to be malicious, the "characteristic element is the design to injure either

actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the resulting injury also must be intentional." (Citations omitted; internal quotation marks omitted.) *Dubay* v. *Irish*, supra, 207 Conn. 532–33.

No reasonable trier of fact could construe the alleged facts to find that the defendant had an actual intent to injure the decedent, nor can one imply that the defendant had a design to injure the decedent on the basis of the facts alleged relating to the defendant's conduct and the related circumstances. On the basis of the evidence submitted, we conclude that a finder of fact reasonably could conclude that the defendant believed that the power was not operative at the premises. Even if we assume arguendo that there was evidence that the defendant deviated from his standard practices, which he described in his deposition, by failing to treat all downed wires as live wires and failing to obtain confirmation that the power had been disconnected, the facts alleged and the evidence presented indicate that this deviation would constitute mere negligence, which is not sufficient to show that the defendant acted in a wilful and malicious manner.

Even if we assume arguendo that a reasonable trier of fact could construe the facts to conclude that the defendant acted in a reckless manner, that still would not be sufficient to show that the defendant's actions were wilful and malicious as required under § 7-308. Accordingly, under the undisputed factual circumstances presented, we conclude that no genuine issue of material fact existed, and that as a matter of law, a fair and reasonable trier of fact could not possibly determine that the defendant's conduct was wilful and malicious.

As the court stated, "[t]he most that can be said—with reasonable inferences made in favor of the plaintiff's

position—is that [the defendant] was aware of potential danger and was aware that a course of conduct involving the possibility of contact with live wires was being embarked on. There were choices which could have been made to avoid the tragedy. Our legislature has determined that [fellow firefighters] are to be liable only for wilful and malicious conduct, though, and the facts do not rise to that level of malfeasance." We agree and, accordingly, the plaintiff's claim fails.

## II

We next address whether the court improperly concluded that no genuine issue of material fact existed as to whether the defendant's conduct amounted to arbitrary, excessive use of governmental power in violation of the decedent's civil rights pursuant to the fourteenth amendment to the United States constitution and § 1983 of title 42 of the United States Code, thereby denying the plaintiff's decedent substantive due process. We conclude that the conduct of which the plaintiff complains is not encompassed within cognizable claims of the denial of substantive due process.

Section 1983 of title 42 of the United States Code provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." "To state a valid claim under § 1983, a plaintiff must establish: (1) [that] the conduct complained of was committed by a person acting under color of state law; and (2) [that] this conduct deprived a person of rights,

privileges, or immunities secured by the Constitution or laws of the United States. . . .

"The United States Supreme Court has recently reiterated that in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated." (Citation omitted; internal quotation marks omitted.) *ATC Partnership* v. *Windham*, 251 Conn. 597, 604–605, 741 A.2d 305 (1999), cert. denied, 530 U.S. 1214, 120 S. Ct. 2217, 147 L. Ed. 2d 249 (2000). In this case, the deprivation alleged by the plaintiff is an impairment of the decedent's right to substantive due process, as guaranteed by the fourteenth amendment to the United States constitution. In order, therefore, to determine the propriety of the trial court's granting of the defendant's motion for summary judgment on the plaintiff's § 1983 claim, we must examine the contours of the federal constitutional right to substantive due process. See id., 605.

"It is axiomatic that the due process clause not only guarantees fair procedures in any governmental deprivation of life, liberty, or property, but also encompasses a substantive sphere . . . barring certain government actions regardless of the fairness of the procedures used to implement them . . . . This basic protection embodies the democratic principle that the good sense of mankind has at last settled down to this: that [due process was] intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice. . . .

"Despite the important role of substantive due process in securing our fundamental liberties, that guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. . . . Rather, substantive due process has been held to protect against only the most arbitrary

and conscience shocking governmental intrusions into the personal realm that our Nation, built upon postulates of respect for the liberty of the individual, has struck between that liberty and the demands of organized society." (Citations omitted; internal quotation marks omitted.) Id., 605–606.

The facts alleged in the plaintiff's complaint in this case similarly fail to meet the standard for a violation of substantive due process. The plaintiff claimed that because volunteer firefighting is conducted under state law and because there is evidence that the decedent was deprived of life without due process of law, there is at least a genuine issue as to whether the elements of §1983 have been met. The plaintiff further alleged that the defendant, acting in his capacity as the chief of the Somers volunteer fire department, allegedly knew of an unusually dangerous condition at the fire scene created by a downed, energized power line, but "nonetheless directed the decedent and others to enter the scene and extinguish the fire, and took no steps to safeguard or even alert them to the unusual danger." We agree with the court that the plaintiff has not stated a viable claim as a matter of federal law.

The court noted in its decision that the factual situation in *County of Sacramento* v. *Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998), "is highly analogous to the factual situation at hand in that public safety officers acted recklessly (or, allegedly, acted with a higher degree of intent). The United States Supreme Court held that even if standards of reasonableness under tort law were violated, that sort of judgment call does not shock the conscience as exceeding the bounds of governmental authority." In *County of Sacramento*, the police officer was faced with allegations similar to those that the plaintiff has alleged against the defendant in this case. See id., 836–37. The plaintiff in that case alleged that a police officer was deliberately indifferent

to the decedent's survival, which the United States Supreme Court treated as equivalent to a claim of reckless disregard for life. Id., 854. The court determined that "[w]hile prudence would have repressed the reaction, the officer's instinct was to do his job as a law enforcement officer, not to . . . cause harm, or kill. . . . [T]here is no reason to believe that [his actions] were tainted by an improper or malicious motive on his part." Id., 855.

Likewise, we view the defendant's actions to be difficult choices made in the line of duty that were not intended to cause harm, but which nonetheless resulted in the unfortunate death of the decedent. Although prudence and adherence to established policy arguably might have prevented that unfortunate result, and a reasonable fact finder might construe the defendant's actions as negligent, we conclude, as a matter of law, that a fact finder could not reasonably conclude, on the basis of the allegations of the complaint, that the defendant's actions were of such a nature that they shocked the conscience. Accordingly, the plaintiff's claim fails.

### III

Finally, we address whether the court improperly adjudicated the legal sufficiency of the complaint on a motion for summary judgment. The plaintiff argues that the defendant's arguments in his motion for summary judgment attacked the complaint's legal sufficiency rather than the facts bearing on the counts that pertain to him. The plaintiff further argues that "[t]he legal sufficiency of pleadings must be addressed in a request to revise or motion to strike" rather than in a motion for summary judgment. We are not persuaded by the plaintiff's argument.

In general, "[t]he office of a motion for summary judgment is not to test the legal sufficiency of the com-

plaint, but is to test the presence of contested factual issues." *Burke* v. *Avitabile*, 32 Conn. App. 765, 772, 630 A.2d 624, cert. denied, 228 Conn. 908, 634 A.2d 297 (1993).[1] The defendant's motion for summary judgment alleged that there was no question of material fact contained in the pleadings that indicated that (1) the defendant's actions rose to the level of having been wilful and malicious or (2) the defendant's conduct amounted to arbitrary, excessive use of governmental power in violation of the plaintiff's civil rights. The lack of factual allegation pertaining to the defendant's liability leaves the plaintiff's complaint void of legally sufficient allegations. Although we recognize that the legal sufficiency of pleadings normally must be raised in a request to revise[2] or a motion to strike,[3] after reviewing the record, we conclude that the court properly decided the motion for summary judgment on the basis of the facts alleged and the evidence submitted rather on the legal sufficiency of the pleadings.

"There is a substantial difference between a motion for summary judgment and a motion to strike [or a

---

[1] We note, however, that courts, on occasion, have taken exception to this general rule and allowed parties procedural latitude to use a motion for summary judgment to test the legal sufficiency of the pleadings. See, e.g., *Pane* v. *Danbury*, 267 Conn. 669, 674 n.7, 841 A.2d 684 (2004); *Truglio* v. *Hayes Construction Co.*, 66 Conn. App. 681, 686–89, 785 A.2d 1153 (2001); but see *Gaudino* v. *East Hartford*, 87 Conn. App. 353, 357, 865 A.2d 470 (2005).

[2] Practice Book § 10-35 provides in relevant part: "Whenever any party desires to obtain (1) a more complete or particular statement of the allegations of an adverse party's pleading . . . the party desiring any such amendment in an adverse party's pleading may file a timely request to revise that pleading."

[3] Practice Book § 10-39 (a) provides in relevant part: "Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted, or (2) the legal sufficiency of any prayer for relief in any such complaint, counterclaim or cross complaint . . . that party may do so by filing a motion to strike the contested pleading or part thereof."

request to revise]. The granting of a motion for summary judgment puts the plaintiff out of court . . . . The granting of a motion to strike [or a request to revise] allows the plaintiff to replead his or her case." (Citation omitted.) *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 38 n.3, 727 A.2d 204 (1999) (*Berdon, J.*, concurring and dissenting). The plaintiff was not prejudiced by his inability to replead because even if he had been permitted to replead, the facts could not be altered to give rise to a cause of action.

In this case, the facts alleged did not give rise to a cause of action. In reviewing the facts and evidence presented to the court, we agree that there was no genuine issue as to any material fact and that the moving party, the defendant, was entitled to judgment as a matter of law. The court found that "the undisputed facts submitted in connection with the motion for summary judgment show that there is no genuine issue of material fact as to whether the conduct of [the defendant] was wilful and malicious . . . and that summary judgment shall enter in favor of [the defendant] on the fifth count. There is neither wilful and malicious conduct . . . nor extreme conduct . . . ."

In considering the plaintiff's due process claim, the court clearly indicated that it decided the motion for summary judgment on the basis of the evidence and facts presented, and not on the basis of legal arguments by the defendant. In adjudicating the matter, the court explained its reasoning, indicating that "[t]he plaintiff has claimed that the defendant is really claiming that no claim has been made on which relief can be granted, and that a motion to strike is the appropriate vehicle by which to address that claim. It is true, as the plaintiff points out, that it generally is not appropriate to use a motion for summary judgment to test the allegations of a complaint because, inter alia, there is no express opportunity to plead over after the granting of a motion

for summary judgment. I have resolved this issue, however, at least partly on the *facts* as presented in the materials. Without deciding the issue, there may be scenarios in which the actions of a person in charge at a fire scene could violate a victim's due process rights. The facts presented in this case, however, make it clear that due process was not violated here." In reviewing the record in its entirety, we conclude that the court properly looked to the facts alleged and evidence presented to determine that there was no way in which a reasonable fact finder could construe the defendant's actions to have violated the decedent's civil rights.

We conclude that in considering both counts that the plaintiff raised against the defendant, the court properly decided the motion for summary judgment on the basis of the facts alleged and the evidence submitted. This was not a situation in which the court improperly granted a motion for summary judgment that was actually a motion to strike.

The judgment is affirmed.

In this opinion the other judges concurred.