GEBREHIWET MOKONNEN *v.* PRO PARK, INC.
(AC 25700)

Bishop, McLachlan and Foti, Js.

Argued April 19—officially released July 25, 2006

*David S. Rintoul,* for the appellant (defendant).

*John T. Bochanis,* for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendant, Pro Park, Inc., appeals from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiff, Gebrehiwet Mokonnen. On appeal, the defendant claims that (1) the court improperly charged the jury on the plaintiff's religious

discrimination claim and (2) there was insufficient evidence to support the plaintiff's negligent misrepresentation claim.[1] We agree with the defendant, reverse the judgment of the trial court and remand the matter for a new trial on the discrimination claim.

The jury reasonably could have found the following facts. The plaintiff, a Christian from Eritrea, began working for the defendant in 1993 as a security guard in a parking garage located adjacent to a Caldor store in Stamford. Isias Yohannas, also an Eritrean Christian, supervised the plaintiff. In about 1997, Fuad Hrezi, a Muslim, was appointed the manager of all of the defendant's facilities in Stamford. At some point in 1997 or 1998, the first time Hrezi met the plaintiff, Hrezi asked whether he was a Christian or a Muslim. Hrezi also asked the plaintiff how long he had lived in Connecticut and New York. The plaintiff did not feel threatened by the conversation.

On May 27, 1999, Hrezi notified the plaintiff that there were no more hours for him to work. Hrezi also told the plaintiff that there were no hours available in the defendant's other facilities in Stamford and, therefore, his employment was terminated. As a result of the discharge, the plaintiff applied for unemployment benefits, and the defendant submitted a statement indicating as the reason for the plaintiff's termination that "Caldor's store closed out and there are no hours for him there or at other Pro Park locations in Stamford."

In October, 1999, the plaintiff went to the Caldor's garage and found that it was still open. He saw individuals he believed to be new employees working for the

---

[1] The defendant also claims that the court improperly instructed the jury on a mixed motive theory of discrimination and improperly admitted evidence of the religious backgrounds of the individuals hired by the defendant subsequent to the plaintiff's discharge. Because we reverse the judgment on other grounds, we do not address these issues.

defendant and noted that Rachid Mokhtari, a Muslim who had been hired subsequent to the plaintiff's discharge, was working there. The plaintiff approached Hrezi and asked him for work. Hrezi told him that there was no opening for him in Stamford, but that he could go to Greenwich where Yohannas could give him some hours. When the plaintiff spoke with Yohannas, he was told that he could not give him a job because "they're hiring all of these Muslims" and that he did not have the authority to hire the plaintiff. Yohannas gave the plaintiff a telephone list of managers and made reference to the number of managers who were Muslims. After the plaintiff's discharge for lack of work, the defendant hired more than seventy individuals to work at its Stamford facilities and, in 1999, from the date of the plaintiff's discharge to the end of the year, two-thirds of the twenty new employees were Muslim.

The plaintiff filed a complaint with the commission on human rights and opportunities (commission), alleging that he was discriminated against on the basis of his religion. After a fact-finding hearing, the commission concluded that probable cause existed that the defendant discriminated against the plaintiff on the basis of his religion. The plaintiff then filed this action, alleging, in the first count, that the defendant's actions constituted a discriminatory employment practice in violation of General Statutes § 46a-60 (a) (1) and, in the second count, negligent misrepresentation, claiming that the defendant had falsely informed the plaintiff that his discharge was due to lack of work. The case was tried to the jury, which found in favor of the plaintiff on both counts of his amended complaint, awarding $103,550 on the discrimination claim and $75,000 on the negligent misrepresentation claim. The court denied the defendant's motion to set aside the verdict, but ordered a remittitur of $35,000 on the discrimination count. The

defendant did not accept the remittitur. The court subsequently rendered judgment in favor of the plaintiff for $163,097.53, including attorney's fees and costs. This appeal followed.

I

The defendant first claims that the court improperly charged the jury on the plaintiff's discrimination claim. Specifically, the defendant claims that the court improperly instructed the jury that the burden of proof shifts to the defendant once the plaintiff establishes a prima facie case of discrimination.

"Our analysis begins with a well established standard of review. When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *Tornaquindici* v. *Keggi*, 94 Conn. App. 828, 845, 894 A.2d 1019 (2006).

"The framework for the burden of production of evidence and the burden of persuasion in an employment discrimination case is well established. [*McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)] and subsequent decisions have established an allocation of the burden of production and an order of presentation of proof . . . in discriminatory-treatment cases. . . . First, the [plaintiff] must establish a prima facie case of discrimination. . . . In

order to establish a prima facie case, the [plaintiff] must prove that: (1) he is in the protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. . . . Once the [plaintiff] establishes a prima facie case, the employer then must produce legitimate, nondiscriminatory reasons for its adverse employment action. . . . This burden is one of production, not persuasion; it can involve no credibility assessment. . . .

"After the plaintiff has established a prima facie case, and the defendant has produced evidence of a legitimate, nondiscriminatory reason for the employment action, [t]he plaintiff retains the burden of persuasion. [The plaintiff] now must have the opportunity to demonstrate that the [defendant's] proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination. [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citation omitted; internal quotation marks omitted.) *Jacobs v. General Electric Co.*, 275 Conn. 395, 400–401, 880 A.2d 151 (2005).

In this case, the court instructed the jury as follows: "If the plaintiff proves that his religion was a motivating factor behind his termination, even if other facts were involved, the plaintiff has established prima facie proof of discrimination, and the burden of proof is shifted to the defendant to articulate a legitimate, nondiscriminatory reason for the discharge. The defendant must articulate its reason by a fair preponderance of the evidence."

"In determining whether an improper jury instruction resulted in harm, we look to the complexity of the issues involved. . . . The issues in an employment discrimination case are necessarily complex, which is evidenced by our adoption of the burden-shifting *McDonnell Douglas Corp.* framework." (Citation omitted.) *Jacobs* v. *General Electric Co.*, supra, 275 Conn. 404. Here, the court's instruction improperly placed on the defendant a burden that it does not bear. Although the burden does shift in employment discrimination cases, it is a burden of production, not a burden of proof. It was also improper for the court to instruct the jury that the defendant need establish, articulate or prove anything, by a preponderance of the evidence. Although the court properly instructed the jury that the plaintiff bears the ultimate burden of proving discrimination, the court did not cure its misstatement placing the burden of proof on the defendant. Because the court's improper instruction was misleading and related to a pivotal issue, we conclude that such an impropriety in this complex case likely affected the verdict. Accordingly, the matter must be remanded for a new trial on the plaintiff's discrimination claim.

II

The defendant next claims that the court improperly denied its motion for a directed verdict or, in the alternative, its motion to set aside the verdict, on the basis of insufficient evidence regarding the negligent misrepresentation claim. We agree.

"Our standard of review of the court's refusal to grant [motions for directed verdicts and to set aside verdicts] requires us to consider the evidence in the light most favorable to the prevailing party, according particular weight to the congruence of the judgment of the trial judge and the jury, who saw the witnesses and heard their testimony. . . . The verdict will be set aside and

judgment directed only if we find that the jury could not reasonably and legally have reached [its] conclusion. . . . While it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . If the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury. . . . Our standard of review, where the trial court's action on a motion to set aside a verdict is challenged, is whether the trial court clearly abused its discretion. . . . The decision to set aside a verdict is a matter within the broad legal discretion of the trial court and it will not be disturbed unless there has been a clear abuse of that discretion." (Citation omitted; internal quotation marks omitted.) *Korolyshun* v. *Condon*, 73 Conn. App. 566, 568–69, 808 A.2d 1146 (2002).

"Our Supreme Court has stated that [d]rawing logical deductions and making reasonable inferences from facts in evidence, whether that evidence be oral or circumstantial, is a recognized and proper procedure in determining the rights and obligations of litigants, but to be logical and reasonable they must rest upon some basis of definite facts, and any conclusion reached without such evidential basis is a mere surmise or guess. . . . A directed verdict is appropriate when the jury could not reasonably and legally have reached any other conclusion. . . . A finding of liability cannot be predicated on conjecture, surmise or guess. . . . Mere possibilities or suppositions will not sustain a legitimate inference of a fact, nor can such an inference be drawn by conjecture only." (Citation omitted; internal quotation marks omitted.) *Crone* v. *Connelly*, 74 Conn. App. 788, 796–97, 813 A.2d 1084 (2003), aff'd, 267 Conn. 581, 840 A.2d 552 (2004).

"Our Supreme Court has long recognized liability for negligent misrepresentation. [It has] held that even an

innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. . . . The governing principles are set forth in similar terms in § 552 of the Restatement Second of Torts (1977): One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. . . . Accordingly, an action for negligent misrepresentation requires a plaintiff to prove that (1) the defendant made a misrepresentation and (2) the plaintiff reasonably relied upon that misrepresentation. . . . Whether evidence supports a claim of . . . negligent misrepresentation is a question of fact." (Internal quotation marks omitted.) *Savings Bank of Manchester* v. *Ralion Financial Services, Inc.*, 91 Conn. App. 386, 389–90, 881 A.2d 1035 (2005).

The plaintiff claims that, as a result of the defendant's statement that there was a lack of work at its facilities, he proceeded to collect unemployment benefits and attempted to obtain other employment. After thoroughly reviewing the record and transcripts, we conclude that the jury reasonably could not have found that the plaintiff acted in reliance on the defendant's assertions that there was no work for him in any of its parking garages. Indeed, it is a matter of common sense that absent discharge from employment, the plaintiff would not have applied for unemployment benefits or sought other employment. Thus, the evidence, if credited by the jury, leads inescapably to the conclusion that the plaintiff sought unemployment compensation and other work not because of any representations made by the defendant, but by the plaintiff's discharge

from employment. In light of the lack of any evidence presented at trial that the plaintiff acted in reliance on the defendant's representations concerning employment and not on the actual discharge, the court should have granted the defendant's motion for a directed verdict or its motion to set aside the verdict.

The judgment is reversed and the case is remanded for a new trial on the discrimination claim and with direction to render judgment in favor of the defendant on the negligent misrepresentation claim.

In this opinion the other judges concurred.