KEVIN PETITTE *v.* DSL.NET, INC.
(AC 27557)

Harper, Lavine and Pellegrino, Js.

Argued February 8—officially released July 10, 2007

*Roger B. Calistro*, for the appellant (plaintiff).

*Peter K. Rydel*, with whom, on the brief, was *Glenn W. Dowd*, for the appellee (defendant).

*Opinion*

LAVINE, J. This case provides a clear illustration of how the employment at will doctrine can lead to seemingly harsh results. This action arose after the defendant, DSL.net, Inc., extended an offer for at-will employment to the plaintiff, Kevin Petitte, changed its mind and rescinded its offer, prior to the plaintiff's commencing employment, but after he had left his former employment. The plaintiff appeals from the summary judgment rendered by the trial court in favor of the defendant, claiming that the court improperly granted the defendant's motion for summary judgment as to all three counts of his amended complaint. Specifically, the plaintiff challenges the court's legal conclusions that (1) his breach of contract claim was barred because an employment at-will relationship existed, despite the fact that he had never commenced employment, (2) his negligent misrepresentation claim must fail because there was no false promise of employment on which he could have relied justifiably and (3) his infliction of emotional distress claim could not be sustained because the defendant's conduct was neither extreme nor outrageous. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of the plaintiff's appeal. On December 8, 2003, Ray Allieri, the defendant's senior vice president for sales and marketing, telephoned the plaintiff and offered him a sales position. Allieri stated that the defendant would send the plaintiff an offer of employment letter as soon as possible and told him that his start date would be December 15, 2003. At the time of this conversation, the plaintiff was employed by another company as a district sales manager. The plaintiff informed the company that he was resigning in order to work for the defendant, following his conversation with Allieri, but before he received the offer letter.

On December 10, 2003, the plaintiff went to the defendant's place of business and obtained the letter. The letter offered the plaintiff employment as the defendant's regional sales manager beginning December 15, 2003. The letter provided that the offer was contingent on "[the plaintiff's] understanding that this letter is not a guarantee of employment for any specified length of time by either party. While it is our hope that you will have a long and fruitful career with [the defendant], your employment will be 'at-will,' which means that either you or the company can terminate your employment at any time for any reason, with or without cause." The plaintiff signed the letter and returned it to the defendant. After doing so, the defendant asked the plaintiff for a list of employment references. The plaintiff provided them. The defendant had not requested any references prior to issuing the letter.

On December 15, 2003, pursuant to terms of the offer letter, the plaintiff reported to the defendant's place of business to begin work. The plaintiff met with Allieri, who indicated that some of the defendant's employees had some concerns about hiring him. Allieri asked the

plaintiff for additional employment references and suggested that he return home and that Allieri would contact him there later. Allieri informed the plaintiff that evening by telephone that the defendant could not employ him. On December 18, 2003, the plaintiff received a letter rescinding the December 10, 2003 letter, on the basis of the information that the defendant received from the plaintiff's references. The plaintiff attempted to return to his former employment but was unsuccessful.

The plaintiff filed an amended complaint on July 19, 2004. In the three count complaint, the plaintiff alleged breach of contract, negligent misrepresentation and infliction of emotional distress. The defendant filed a motion for summary judgment on December 12, 2005, which the court granted as to all three counts. This appeal followed. Additional facts will be set forth as necessary.

The plaintiff alleges that the court improperly rendered summary judgment as to all three counts. Accordingly, as a threshold matter, we set forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Nichols* v. *Salem Subway Restaurant*, 98 Conn. App. 837, 840–41, 912 A.2d 1037 (2006).

"On appeal, we must determine whether the legal conclusions reached by the trial court are legally and

logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) Id., 841. We now will review in turn the rendering of summary judgment as to each count of the plaintiff's complaint.

## I

## BREACH OF CONTRACT

The plaintiff first claims that the court improperly granted the defendant's motion for summary judgment as to count one of his complaint, which alleged breach of contract. The plaintiff argues that the court improperly determined as a matter of law that the defendant could not face liability in contract for terminating its offer for at-will employment prior to the plaintiff's commencing employment. We consider, as a matter of first impression in Connecticut, whether the employment at will doctrine extends to offers for at-will employment. Because we agree with the court that the employment at will doctrine applies to all aspects of the employment relationship and is not conditioned on the prospective employee actually commencing employment, we are not persuaded by this claim.

It is well established that "[i]n Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary. Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability." (Internal quotation marks omitted.) *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 697–98, 802 A.2d 731 (2002).

In rendering summary judgment in favor of the defendant on the plaintiff's contract claim, the court referenced *Thibodeau* and stated: "[The defendant] had the

right to terminate its employment relationship with the plaintiff for any reason, or no reason, at any time. . . . It is hard to imagine a broader description of an employer's rights. An employment relationship with [the defendant] arguably started when the plaintiff signed and returned the December 10, 2003 offer letter. Clearly, on December 15, 2003, there was some kind of employment relationship that caused the [plaintiff] to report . . . to begin work. The point, however, is not the precise time when an employment relationship began or the exact contours of that relationship, but rather that [the defendant's] rights are not conditioned on the relationship reaching any particular point. The fact that [the defendant] exercised its rights before the plaintiff actually started work is not material. The only material fact is the at-will nature of the employment relationship. . . . In practical terms, this rule makes sense. An employer who changes its mind about a prospective employee should not be required to allow the person to actually commence duties before ending the relationship. In a situation like the present one, commencement of duties customarily involves access to confidential information and the beginning of an agency relationship. The law does not require employers to undertake such burdens for an unwanted at-will employee."

The plaintiff acknowledged in the affidavit that he submitted in opposition to the summary judgment motion that he understood his employment with the defendant would be "at will." The December 10, 2003 letter, which the plaintiff signed, explicitly provided that the defendant could terminate the employment "*at any time* for any reason, with or without cause"; (emphasis added); and at his deposition, the plaintiff testified that he "understood what [he] was getting into." The plaintiff argues, however, that his breach of contract action is not barred as a matter of law because the parties created two separate contracts on December

10, 2003, one to employ and the other of employment. Although he concedes that the defendant could terminate the employment contract the minute after he provided service, he asserts that it could not terminate the contract to employ him for any reason prior to his first day of employment. He claims that because he never had the opportunity to begin employment, he never became an employee. As a result, he asserts that the protections afforded to the defendant under the employment contract, as an at-will employer, were not applicable to the contract to employ him.

In contrast, the defendant argues that recognizing the fiction of two distinct contracts "would create the absurdity that putative at-will employees would have greater rights preemployment than after they began working. . . . It would force would be employers who have decided to terminate the employment relationship to wait until the employee begins work before doing so, even under circumstances where there is no possibility that an actual employment relationship will ever exist."

As the plaintiff challenges the court's legal conclusion, we must determine whether, as a matter of law, the employment at will doctrine operates to shield employers from liability for terminating an employment relationship after making an offer but before the prospective employee commences work. As stated previously, this issue is one of first impression in Connecticut. Thus, we look for guidance to courts from other jurisdictions that have considered it.

The Virginia Supreme Court in *Sartin* v. *Mazur*, 237 Va. 82, 375 S.E.2d 741 (1989), held that the plaintiff could not assert a cause of action for breach of contract on the basis of the defendant's decision not to allow her to begin work even after she had accepted the defendant's offer. Id., 85. After the plaintiff interviewed with the defendant, the defendant issued a written offer

of employment, notified the plaintiff as to her start date and requested that she bring certain documents to work on the first day. Id., 83–84. The plaintiff quit her previous job, allegedly in reliance on the written job offer, and relocated to the county where the defendant was located. Id., 84. On her first day, however, she was informed that she could not commence work because she had failed to include on her application a previous job that she had included on her resume. Id. Similar to the plaintiff in the present case, the plaintiff in *Sartin* did not allege that her employment was to be anything other than at will. Id., 85.

The Virginia Supreme Court reasoned: "It would be absurd to require an employer, which had changed its mind after an offer had been made, to actually employ the applicant for one hour or one day so that the employee could then be discharged. . . . Consequently, we hold that an offer for at will employment is terminable at any time, which includes the time before the prospective employee assumes the position. In sum, *the doctrine of free terminability draws no distinction between the offer of employment and the actual act of employment.*" (Emphasis added.) Id., 85.

We likewise consider *Slate* v. *Saxon, Marquoit, Bertoni & Todd*, 166 Or. App. 1, 999 P.2d 1152, review denied, 330 Or. 375, 6 P.3d 1105 (2000). In *Slate*, the defendant offered the plaintiff a position as an attorney, conditioned on his passing the Oregon bar examination. Id., 3. The plaintiff accepted the offer and passed the bar examination. Id. Before the plaintiff was scheduled to commence working, however, the defendant told him that it had terminated the employment arrangement. Id. In affirming the trial court's granting of the defendant's motion for summary judgment, the court stated as to the plaintiff's breach of contract claim that "it would be completely illogical to hold that an employer is exposed to liability if it invokes the right to terminate at

will before the employee begins working but is absolved from liability if it defers doing so until immediately after the employee first reports for work. . . . It would serve the interests of no one . . . to discourage putative employers from discharging [potential employees] earlier rather than later, under circumstances where there is no possibility that an actual employment relationship will ever exist." Id., 5–6. Moreover, the court rejected the argument put forth by the plaintiff in the present case that there were two separate contracts, one to employ and the other of employment. See id., 6.

Upon our review of the persuasive reasoning set forth in *Sartin* and *Slate* and in light of our case law, we conclude that logic dictates that no distinction should be drawn between the offer of employment and the actual act of employment when the employment relationship is at will. We hold, therefore, that the employment at will doctrine extends to offers of at-will employment. We believe this clarification of the law serves to put employees on notice of the risk they take when leaving existing employment for another one. An individual leaving the employ of one entity for an at-will position with another should understand that he has no guarantee that he will be permitted to commence employment. Given our legal conclusion and the undisputed facts in the present case that the November 10, 2003 letter explicitly stated that the plaintiff's employment was terminable at will and that the plaintiff understood the terms of his employment, the court properly rendered summary judgment in favor of the defendant as to the breach of contract claim.

## II

## NEGLIGENT MISREPRESENTATION

The plaintiff next claims that the court improperly granted the defendant's motion for summary judgment

as to count two of his complaint, which alleged negligent misrepresentation. The plaintiff alleged that he justifiably relied to his detriment on the defendant's false representation that he could commence employment on December 15, 2003, when the defendant knew that it had not yet consulted the plaintiff's employment references. We conclude that the court properly rendered summary judgment because, as a matter of law, the plaintiff's factual allegations failed to rise to the level of a legally viable claim.

In the second count of the complaint, the plaintiff alleged the following: "The statement by the defendant to the plaintiff of an offer to join the defendant to work as [r]egional [s]ales [m]anager . . . with a start date of December 15, 2003 was false . . . and the defendant knew, or in the exercise of reasonable care as an employer should have known at the time it made such representations that they were false. . . . The plaintiff relied on the untrue representations of the defendant, and quit his existing job to start work with the defendant, which resulted in the permanent forfeiture of that job . . . . The plaintiff suffered pecuniary loss as a result of his reliance . . . ."

"This court has long recognized liability for negligent misrepresentation. . . . One who, in the course of his business, profession or employment . . . supplies *false* information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Emphasis added; internal quotation marks omitted.) *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 643, 850 A.2d 145 (2004).

In this case, the facts alleged do not state a cause of action. Although we recognize that the legal sufficiency

of pleadings normally must be raised in a request to revise or a motion to strike, after reviewing the record, we conclude that given the circumstances of this case, the court properly decided the motion for summary judgment on the basis of the facts alleged and the evidence submitted rather than on the legal sufficiency of the pleadings. See *Arnone* v. *Connecticut Light & Power Co.*, 90 Conn. App. 188, 204, 878 A.2d 347 (2005).

We agree with the court's conclusion that as a matter of law, the employment offer contained in the December 10, 2003 letter did not constitute negligent misrepresentation because it (1) did not guarantee employment and (2) stated that any employment relationship was at will. The letter explicitly provided that "this letter is not a guarantee of employment [and that] your employment will be 'at-will,' which means that either you or the company can terminate your employment at any time for any reason, with or without cause." Moreover, the plaintiff's reliance on the letter as a guarantee of employment was not justifiable as a matter of law. As noted by the court, "the offer letter was fraught with risk because [the defendant] reserved unfettered discretion to end the employment relationship at any time." We agree that there was no genuine issue as to any material fact and that the defendant was entitled to judgment as a matter of law. We therefore conclude that summary judgment was properly rendered as to the negligent misrepresentation claim.[1]

## III

## INFLICTION OF EMOTIONAL DISTRESS

The plaintiff's final claim is that the court improperly granted the defendant's summary judgment motion as

---

[1] We note that the court indicated after discussing this count that "[t]he court's rulings in this and other aspects of this opinion should not be construed as approval of [the defendant's] conduct toward the plaintiff. It is apparent that he received shoddy treatment. The court's role, however, is not to determine whether [the defendant] acted honorably but rather whether [its] acts were tortious."

to count three of his complaint, which alleged infliction of emotional distress. We are not persuaded because we conclude that the court properly (1) construed the plaintiff's complaint as setting forth a cause of action for intentional infliction of emotional distress and (2) determined that, as a matter of law, the defendant's conduct was not extreme and outrageous.

First, we must determine whether the court properly construed the allegations of the plaintiff's complaint. The plaintiff captioned count three of his amended complaint "infliction of emotional distress."[2] In its memorandum of law in support of its motion for summary judgment, the defendant treated the plaintiff's allegations as asserting a claim for intentional infliction of emotional distress. The plaintiff responded in his objection to the motion that the defendant's conduct was sufficient to support a cause of action for both intentional and negligent infliction of emotional distress. In its memorandum of decision, the court agreed with the defendant and construed the complaint as alleging a claim of intentional infliction of emotional distress.

"[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary." (Internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 97 Conn. App. 541, 562, 905 A.2d 1214, cert. denied, 280 Conn. 942, 943, 912 A.2d 479 (2006). "Whenever [the] language [of the pleadings] fails to define *clearly* the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general

---

[2] Connecticut recognizes two types of emotional distress claims, intentional infliction of emotional distress; see *Carnemolla* v. *Walsh*, 75 Conn. App. 319, 331–32, 815 A.2d 1251, cert. denied, 263 Conn. 913, 821 A.2d 768 (2003); and negligent infliction of emotional distress. See *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 446, 815 A.2d 119 (2003).

theory which it was intended to follow, and do substantial justice between the parties." (Emphasis added.) *Hill* v. *Williams*, 74 Conn. App. 654, 655, 813 A.2d 130, cert. denied, 263 Conn. 918, 822 A.2d 242 (2003).

In order to prevail on a claim of intentional infliction of emotional distress, the plaintiff must prove: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Carnemolla* v. *Walsh*, 75 Conn. App. 319, 331, 815 A.2d 1251, cert. denied, 263 Conn. 913, 821 A.2d 768 (2003).

As to count three, the plaintiff alleged the following. "On December 15, 2003, the plaintiff reported as instructed to the defendant's place of business, where he was kept waiting and not permitted to start his job, and ultimately told he would not be permitted to start his job for reasons no one had the decency or inclination to explain adequately to him. . . . The defendant . . . *knew* that its conduct . . . was *outrageous* and involved an unreasonable risk of causing distress to the plaintiff. . . . The defendant *knew* that the distress of being deprived of a means of livelihood . . . coming on the eve of Christmas, for a man with two small children, might result in illness, depression, despondency or bodily harm. . . . As a result of the defendant's conduct, the plaintiff suffers from mental stress and fatigue, and physical ache and weariness . . . ." (Emphasis added.) On the basis of our plenary review, we agree with the court that the plaintiff's complaint alleged a claim of intentional infliction of emotional distress, given that the plaintiff described the defendant's conduct as *outrageous* and claimed that the

defendant *knew* its conduct would inflict emotional distress on the plaintiff.[3]

We must examine next whether when viewing the evidence in the light most favorable to the plaintiff, the defendant was entitled to summary judgment. The court concluded that, as a matter of law, the defendant's conduct was not extreme and outrageous. We agree with the court.

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury. . . . Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . .

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' . . .

[3] We acknowledge that the plaintiff's allegations include language not inconsistent with a claim of negligent infliction of emotional distress. See *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 446–47, 815 A.2d 119 (2003) ("in order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm" [internal quotation marks omitted]).

The fact remains, however, that the plaintiff failed to allege the distinct torts as separate causes of action in his complaint, as required by our rules of practice. See Practice Book § 10-26 ("[w]here [there are] separate and distinct causes of action, as distinguished from separate and distinct claims for relief founded on the same cause of action or transaction . . . the statement of the second shall be prefaced by the words Second Count, and so on for the others; and the several paragraphs of each count shall be numbered separately beginning in each count with the number one").

Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient . . . ." (Citation omitted; internal quotation marks omitted.) *Carnemolla* v. *Walsh*, supra, 75 Conn. App. 331–32.

Here, as emphasized previously, in terminating the employment relationship, the defendant was exercising the rights it expressly had reserved in the letter. As a result, when viewing the evidence in the light most favorable to the plaintiff, although the conduct alleged in this case may very well have been hurtful and caused distress, it was not extreme and outrageous, as a matter of law. See *Appleton* v. *Board of Education*, 254 Conn. 205, 211, 757 A.2d 1059 (2000) (extreme or outrageous conduct not found where plaintiff subjected to psychiatric evaluations, condescending comments made by employer, escorted off employer's premises by police and forced to resign); *Muniz* v. *Kravis*, 59 Conn. App. 704, 709, 757 A.2d 1207 (2000) (defendant's conduct in sending armed guard to notify plaintiff and her husband of termination when husband recovering from surgery not extreme and outrageous). The court properly granted the defendant's summary judgment motion as to the claim of infliction of emotional distress.

The judgment is affirmed.

In this opinion HARPER, J., concurred.

PELLEGRINO, J., concurring. Although I agree that the judgment must be affirmed, I respectfully disagree with the majority's conclusion in part II of the opinion that the factual allegations by the plaintiff, Kevin Petitte, with regard to his negligent misrepresentation claim, failed to rise to the level of a legally viable claim. I conclude, instead, that the trial court properly rendered summary judgment as to the negligent misrepresentation count of the plaintiff's amended complaint because,

although the facts alleged stated a cause of action, there was insufficient evidence to establish the existence of a genuine issue of material fact as to whether the defendant, DSL.net, Inc., made "false representations" to the plaintiff. I would, therefore, affirm the judgment of the trial court on that ground.

"Our Supreme Court has long recognized liability for negligent misrepresentation. [It has] held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. . . . The governing principles are set forth in similar terms in § 552 of the Restatement Second of Torts (1977): One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Internal quotation marks omitted.) *Mokonnen* v. *Pro Park, Inc.*, 96 Conn. App. 625, 632–33, 901 A.2d 725, cert. denied, 280 Conn. 924, 908 A.2d 1088 (2006). "[A]n action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Nazami* v. *Patrons Mutual Insurance Co.*, 280 Conn. 619, 626, 910 A.2d 209 (2006).

In count two of the amended complaint, the plaintiff alleged: "The statement by the defendant to the plaintiff of an offer to join the defendant . . . with a start date of December 15, 2003 was false . . . and the defendant knew, or in the exercise of reasonable care as an employer should have known at the time it made such representations that they were false. . . . The plaintiff

relied on the untrue representations of the defendant, and quit his existing job to start work with the defendant, which resulted in the permanent forfeiture of that job . . . . The plaintiff suffered pecuniary loss as a result of his reliance on the defendant's negligent misrepresentation, which pecuniary loss includes the loss of his income, commissions, and benefits . . . ."

The plaintiff also submitted an affidavit in opposition to the defendant's motion for summary judgment in which he attested that there was an assumption that he was to be hired, that he had a firm offer of employment and that having relied on these representations, he quit his previous job. The plaintiff further attested that the false representation was that there was a job available to him, when, in fact, there was none. I believe that on the basis of the facts alleged and the evidence submitted, the plaintiff stated a cause of action for negligent misrepresentation.

The plaintiff's evidence, however, although sufficient to establish a legally viable claim, was insufficient to survive the defendant's motion for summary judgment. The plaintiff did not allege an adequate factual predicate to raise a genuine issue of material fact as to whether the defendant's representations were false. Cf. *Miller* v. *Bourgoin*, 28 Conn. App. 491, 498, 613 A.2d 292 ("it remains incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined as a matter of law, that a genuine issue of material fact exists" [internal quotation marks omitted]), cert. denied, 223 Conn. 927, 614 A.2d (1992). The plaintiff merely alleged that the defendant made false representations by informing him that he was hired despite the fact that the defendant knew it had not consulted his references. The plaintiff alleged that the defendant's offer letter of December 10, 2003, contained statements that were false. The trial court, however, found that there were no statements in the offer letter

that were false. Additionally, in his affidavit in opposition to the defendant's motion for summary judgment, the plaintiff did not refer to any statements in the offer letter that were "false." When opposing a motion for summary judgment, it is not enough for the plaintiff merely to assert the existence of a disputed issue. See *Branford* v. *Monaco*, 48 Conn. App. 216, 222, 709 A.2d 582 ("[m]ere assertions of fact . . . are insufficient to establish the existence of a material fact" [internal quotation marks omitted]), cert. denied, 245 Conn. 903, 719 A.2d 900 (1998).

Unfortunately, given the "at-will" termination provision in the defendant's offer letter that permitted termination for any reason with or without cause, the defendant had the absolute right to rescind its offer at any time. As reprehensible as the defendant's conduct in this case might have been in offering employment with the knowledge that the plaintiff would terminate his current job in reliance thereon, and then withdrawing that offer before employment actually commenced, the defendant did so within its rights in accordance with the at-will employment relationship it had with the plaintiff. I agree with the trial court's conclusion that the offer of employment, "while arguably illusory, was not false."

I would, therefore, affirm the decision of the trial court with regard to the count of negligent misrepresentation on the ground that there was insufficient evidence to establish a genuine issue of material fact with regard to the defendant's alleged false representations.

In all other aspects of the majority's opinion, I concur.