MICHAEL SWEENEY *v.* FRIENDS OF
HAMMONASSET ET AL.
(AC 34048)

Lavine, Robinson and Sheldon, Js.

Submitted on briefs September 17, 2012—officially released January 1, 2013

*Bruce A. Chaplin* filed a brief for the appellant (plaintiff).

*Thomas M. Noniewicz* filed a brief for the appellees (defendants).

*Opinion*

ROBINSON, J. The plaintiff, Michael Sweeney, appeals from the judgment of the trial court rendering summary judgment in favor of the defendants, the Friends of Hammonasset (Friends) and Deanna Becker. The plaintiff claims that the court concluded improperly that (1) the theory of liability set forth in his complaint sounded in premises liability, on which he could not prevail as a matter of law because the defendants did not control the premises on which he fell and was injured, and (2) General Statutes § 52-557m applies to provide Becker with statutory immunity from the plaintiff's claims against her in her capacity as president of Friends.[1] We affirm the judgment of the trial court.

The following undisputed facts are relevant to our consideration of this appeal. Friends is a nonprofit volunteer organization under 26 U.S.C. § 501 (c) (3) that works with Hammonasset Beach State Park (park), a park owned and operated by the state. Becker is the president of Friends and has been at all relevant times.

---

[1] The plaintiff also claims that should this court find that the first count of his second amended complaint sounds in ordinary negligence or negligence under 2 Restatement (Second), Torts § 324 A (1965), he has established that the defendants are liable for failure to exercise reasonable care because he provided evidence that they had a duty. We need not reach this argument, as we conclude that the court correctly construed the first count of the plaintiff's complaint as sounding in premises liability.

She is a volunteer who is not compensated for her services.

An annual event, the "Owl Prowl," was held at the park on the evening of January 8, 2010. Friends was invited to participate in the event and handled all the publicity for it. Members of Friends also provided support for the event by greeting, signing in and organizing visitors. The event was not organized by Friends, however, but instead by the Meigs Point Nature Center (nature center), which is under the jurisdiction of the department of environmental protection.[2] Friends could not sponsor or host the event because it neither applied for nor received a special use permit from the state, which is required in order to sponsor such an event.

The program, designed by the nature center, included four stations within the nature center where people could learn about owls and take a guided walk on Willard Island, with Friends volunteers providing interpretation. At no time on the evening of January 8, 2010, did Friends control or direct where the public was allowed to walk, nor did it have possession or control of the park. Maintenance of the premises where the event was held was the responsibility of the state.

The plaintiff learned about the event on January 7, 2010, through an article in the local newspaper for the towns of Madison and Killingworth. The article invited readers to "[c]ome, see, hear, and learn about owls during the [Friends] annual Owl Prowl on Friday, [January 8, 2010] at 6:30 p.m." It noted that "[a]fter the brief presentation, several Friends volunteers will lead tours out to Willard Island . . . ."

The plaintiff, accompanied by his wife and grandson, attended the event on January 8, 2010. After viewing

---

[2] The department of environmental protection has since been renamed the department of energy and environmental protection.

the stations inside the nature center, the plaintiff went into a room and waited for his tour of Willard Island. At some point, a Friends volunteer, Shannon Schiesser, came outside, said that they were all set, and the group walked outside. While the group that included the plaintiff was walking on the driveway road, the plaintiff slipped and fell. The plaintiff got up and immediately went to the Shoreline Emergency Room (clinic) in Guilford because he believed that his wrist was broken. The clinic referred him to Yale-New Haven Hospital that evening because the break was so severe.

The plaintiff filed a two count, second amended complaint on February 24, 2011. The first count was brought against both defendants. The second count was brought against Becker only. The defendants filed a motion for summary judgment on January 21, 2011, arguing that they did not have control or possession of the premises where the plaintiff fell and that Becker had immunity pursuant to § 52-557m. The court granted the motion on November 9, 2011.[3] This appeal followed.

As a threshold matter, we set forth the applicable standard of review. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When

---

[3] We note that the defendants' motion for summary judgment was addressed to the amended complaint that was filed on October 27, 2010. Neither the parties, nor the court, addressed the fact that the second amended complaint was filed after the motion for summary judgment. In fact, the plaintiff continued to reference the amended complaint in his objection to the defendants' motion for summary judgment that was filed on March 15, 2011. Because the changes in the second amended complaint do not affect the analysis of the plaintiff's claim, we will treat the defendants' motion for summary judgment and the court's memorandum of decision as applying to the operative second amended complaint.

. . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Wilton Meadows Ltd. Partnership* v. *Coratolo*, 299 Conn. 819, 823, 14 A.3d 982 (2011).

I

The plaintiff first argues that the court improperly granted the defendants' motion for summary judgment as to count one of his second amended complaint because it improperly construed that count as sounding in premises liability and failed to recognize that the plaintiff's second amended complaint sounded in ordinary negligence or negligence under 2 Restatement (Second), Torts § 324 A (1965), and that there was evidence to support the cause of action.[4] We are unpersuaded.

First, we must determine whether the court properly construed the allegations of the plaintiff's second amended complaint. Count one of the second amended complaint is not labeled. The plaintiff alleges therein that he was invited to the park by Friends on January 8, 2010, and that as a visitor/invitee of the defendants, he fell on ice. He further alleges that the icy conditions had existed for an unreasonable length of time, and "further it was the mode of operations for 'Friends' to conduct nature walks." As a result of the "dangerous

---

[4] The plaintiff also appears to argue that the court improperly ruled that he failed to state a cause of action. As the ruling was in the context of a motion for summary judgment, rather than a motion to strike, the plaintiff maintains that he could not avail himself of the right to replead under Practice Book § 10-44. We disagree. At no point in the court's memorandum of decision did the court conclude that the plaintiff failed to state a cause of action. Rather, the court concluded that count one of the plaintiff's second amended complaint sounded in premises liability, rather than ordinary negligence. Such a result is not analogous to the granting of a motion to strike.

and unsafe icy conditions of the walking area," the plaintiff was caused to suffer injuries and losses. Furthermore, the defendants were negligent in that they: (1) failed to provide a reasonably safe walking area; (2) failed to place signs or otherwise warn of the icy conditions; (3) failed to exercise a reasonable inspection to make it safe for visitors; (4) failed to take proper measures to remedy and correct the condition; and (5) knew or should have known that the area was icy.

In their memorandum of law in support of their motion for summary judgment, the defendants addressed the plaintiff's allegations as asserting a claim of negligence under a theory of premises liability. The plaintiff responded in his objection to the motion that the defendants' conduct was sufficient to support a cause of action sounding in ordinary negligence or negligence under 2 Restatement (Second), supra, § 324 A, p. 142.

"[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . Whenever [the] language [of the pleadings] fails to define clearly the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice between the parties." (Citation omitted; internal quotation marks omitted.) *Petitte* v. *DSL.net, Inc.*, 102 Conn. App. 363, 374–75, 925 A.2d 457 (2007).

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *Mills* v. *The Solution, LLC*, 138 Conn. App. 40, 59, 50 A.3d 381 (2012). "[T]he existence of a duty of care is a prerequisite to a finding of negligence . . . .

The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant [breached] that duty in the particular situation at hand. . . . If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." (Citation omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 538–39, 51 A.3d 367 (2012).

Our Supreme Court has stated that under a theory of ordinary negligence, "the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . Additionally, [a] duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." (Citation omitted; internal quotation marks omitted.) Id., 539. "[T]here generally is no duty that obligates one party to aid or to protect another party. . . . One exception to this general rule arises when a definite relationship between the parties is of such a character that public policy justifies the imposition of a duty to aid or to protect another. . . . In delineating more precisely the parameters of this limited exception to the general rule, this court has concluded that, [in the absence of] a special relationship of custody or control,

there is no duty to protect a third person . . . ." (Internal quotation marks omitted.) Id., 539–40.

Additionally, duty can be found under circumstances described in 2 Restatement (Second), supra, § 324 A. Section 324 A provides: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

There is also a duty under a theory of premises liability. In premises liability, "[t]he law is clear that [a] possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe. . . . In addition, the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover." (Internal quotation marks omitted.) *Mills* v. *The Solution, LLC*, supra, 138 Conn. App. 59.

Reading the complaint in its entirety, the allegations of negligence pertain to the alleged failure of the defendants either reasonably to inspect and maintain the defective premises in order to render them reasonably safe or to warn of dangers that the plaintiff, as an invitee of the defendants, could not reasonably be expected to discover. Though these allegations are not inconsistent with a duty under a theory of ordinary negligence, the gravamen of the plaintiff's complaint pertains to the "dangerous and unsafe icy conditions of the walking

area . . . ." See *Petitte* v. *DSL.net, Inc.*, supra, 102 Conn. App. 376 n.3.

Section 324 A does not apply because, as the trial court aptly noted, the "plaintiff in the present action does not allege that the defendants owed him a duty based upon their arrangement with a third party to render certain services." Rather, he alleges that the defendants owed him a duty based on the services that were rendered to him, as an invitee on the premises. As the plaintiff's allegations stem from an injury caused by a dangerous condition on the premises, liability is dependent on possession and control of the dangerous premises. See *LaFlamme* v. *Dallessio*, 261 Conn. 247, 251, 802 A.2d 63 (2002) ("[l]iability for injuries caused by defective premises . . . does not depend on who holds legal title, but rather on who has possession and control of the property"). Accordingly, the court correctly determined that the negligence alleged in count one of the second amended complaint is founded on a theory of premises liability, rather than general negligence.[5]

---

[5] The plaintiff also alleges that it was the "mode of operation" of the defendants to provide nature walks. This allegation suggests that the plaintiff is attempting to cast himself as a business invitee. On the basis of the allegations of the complaint, however, the plaintiff was not a business invitee, but rather, a public invitee. "A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public. . . . A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." (Citation omitted; internal quotation marks omitted.) *Corcoran* v. *Jacovino*, 161 Conn. 462, 465, 290 A.2d 225 (1971). Even if the plaintiff could allege that he was a business invitee, the mode of operations allegation would provide further support that he has alleged negligence based on a theory of premises liability, as the mode of operation rule applies only to premises liability. The mode of operation rule is "a rule of premises liability pursuant to which a business invitee who is injured by a dangerous condition on the premises may recover without proof that the business had actual or constructive notice of that condition if the business' chosen mode of operation creates a foreseeable risk that the condition regularly will occur and the business fails to take reasonable measures to discover and remove it." *Kelly* v. *Stop & Shop, Inc.*,

Next, we must examine whether, when viewing the evidence in the light most favorable to the plaintiff, the defendants were entitled to summary judgment on the plaintiff's premises liability claim. The court concluded that, as a matter of law, the defendants could not be found negligent because they did not have possession or control of the premises. We agree with the court.

In support of their motion for summary judgment, the defendants submitted affidavits from Russ Miller, the director of the nature center, and Don Rankin, a volunteer of Friends, both of whom attested that Friends neither organized nor was responsible for the event and that the defendants did not have possession or control of the nature center or any of the premises used for the event. Miller further averred that Friends could not host the event because it had not applied for or been granted a special permit for that purpose by the state, and that maintenance of the premises where the event was held was the responsibility of the state.

"Liability for injuries caused by defective premises . . . does not depend on who holds legal title, but rather on who has possession and control of the property." *LaFlamme* v. *Dallessio*, supra, 261 Conn. 251. "Thus, the dispositive issue in deciding whether a duty exists is whether the [defendant] has any right to possession and control of the property. . . . Retention of control is essentially a matter of intention to be determined in the light of all the significant circumstances. . . . The word control has no legal or technical meaning distinct from that given in its popular acceptation . . . and refers to the power or authority to manage, superintend, direct or oversee." (Citation omitted; internal quotation marks omitted.) *Mills* v. *The Solution, LLC*, supra, 138 Conn. App. 60.

281 Conn. 768, 769–70, 918 A.2d 249 (2007) (en banc). Accordingly, the plaintiff could recover only if he alleged a cause of action under a theory of premises liability.

In the present case, the defendants provided two affidavits to support their argument that they did not have control or possession of the premises. The plaintiff did not provide any evidence to refute the defendants' position. Instead, both in his objection to the motion for summary judgment and on appeal, the plaintiff has focused his argument on the position that count one sounds in ordinary negligence and that there is sufficient evidence to support a cause of action on that theory. By doing so, the plaintiff has failed to meet his burden of demonstrating that there is a genuine issue of material fact as to whether the defendants possessed or controlled the premises in the location where he fell. Accordingly, the court correctly concluded that there was no genuine issue of material fact and that the defendants were entitled to judgment as a matter of law on count one of the second amended complaint.

## II

The plaintiff also claims that the court improperly granted the defendants' motion for summary judgment as to count two of his second amended complaint because it improperly concluded, pursuant to 42 U.S.C. § 14502 (a) of the Volunteer Protection Act of 1997 (act), 42 U.S.C. § 14501 et seq., that § 52-557m provided Becker with statutory immunity in her capacity as president of Friends.[6] He maintains that § 52-557m does not apply because he did not allege that Becker was negligent in her policy or decision-making activities, but rather that she was negligent in her supervising, training and oversight activities as president of Friends. Such a distinction, he maintains, renders 42 U.S.C. § 14502 (a) inapplicable.[7] We disagree.

[6] Because the defendants did not file an answer to the plaintiff's second amended complaint, the first time that Becker raised the claim of statutory immunity was in the motion for summary judgment.

[7] The plaintiff also claims that Becker can be held liable under 42 U.S.C. § 14504, which, he argues, is an exception to the rule of nonliability of volunteers found at 42 U.S.C. § 14503. Because we have determined that § 52-557m does apply, we decline to reach this argument.

"The following well settled principles of statutory interpretation govern our review. . . . Because statutory interpretation is a question of law, our review is de novo. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 137 Conn. App. 307, 313–14, 48 A.3d 694, cert. granted on other grounds, 307 Conn. 918, 54 A.3d 562 (2012).

Count two of the second amended complaint alleges that Becker was negligent in her supervising, training and overseeing duties in that she failed to set up a walk-through of the path to determine if safety hazards existed; failed to assign a member of Friends to do a walk-through; and failed to notify or assign a volunteer to notify the state to plow or sand the area.

Section 52-557m provides: "Any person who serves as a director, officer or trustee of a nonprofit organization qualified as a tax-exempt organization under Section 501 (c) of the Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended, and who is not compensated for such services on a salary or prorated equivalent basis, shall be immune from civil liability for damage or injury occurring on or after October 1, 1987, resulting from any act, error or omission made in the exercise of such person's policy or decision-making responsibilities if such person was acting in good faith and within the scope of such person's official functions and duties, unless such damage or injury was caused by the reckless, wilful or wanton misconduct of such person."

"Decision-making responsibility" is not defined in the General Statutes. "In the absence of a definition of terms in the statute itself, [w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Citation omitted; internal quotation marks omitted.) *State* v. *LaFleur*, 307 Conn. 115, 128, 51 A.3d 1048 (2012). Similarly, under General Statutes § 1-1 (a), "[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." Thus, we turn to Black's Law Dictionary for guidance on the statutory language. Black's Law Dictionary defines "decision-making responsibility" as the "authority to come to a binding resolution of an issue." Black's Law

Dictionary (9th Ed. 2009). When the phrase "decision-making responsibility" is examined in conjunction with the dictionary definitions of supervise, oversee and train,[8] the allegations of the complaint describe conduct falling squarely within Becker's decision-making responsibilities. The allegations imply that Becker had the authority to make decisions that included ordering a walk-through of the park before the event, directing that a Friends volunteer perform the walk-through, and informing the state of dangerous conditions that the volunteer might find. Accordingly, the plaintiff cannot prevail on his claim that decision-making responsibilities do not encompass supervising, training and overseeing.

Next, the court must determine if § 52-557m provides greater protections for volunteers than does the act, such that it is not preempted. Section 14502 (a) of the act provides in relevant part that "[t]his chapter preempts the laws of any [s]tate to the extent that such laws are inconsistent with this chapter, except that this chapter shall not preempt any [s]tate law that provides additional protection from liability relating to volunteers or to any category of volunteers in the performance of services for a nonprofit organization or governmental entity." 42 U.S.C. § 14502 (a).

The act, pursuant to 42 U.S.C. § 14503 (a), provides in relevant part that "no volunteer of a nonprofit organization . . . shall be liable for harm caused by an act or omission of the volunteer on behalf of the organization . . . if—(1) the volunteer was acting within the scope of the volunteer's responsibilities in the nonprofit organization . . . at the time of the act or omission; (2)

---

[8] Supervise is defined as "oversee with the powers of direction and decision of implementation of one's own or another's intentions." Webster's Third New International Dictionary Unabridged (2002). Oversee is synonymous with supervise. Id. Train means to "instruct or drill in habits of thought or action" or to "give instruction to." Id.

if appropriate or required, the volunteer was properly licensed, certified, or authorized by the appropriate authorities for the activities or practice in the [s]tate in which the harm occurred, where the activities were or practice undertaken within the scope of the volunteer's responsibilities in the nonprofit organization . . . (3) the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer; and (4) the harm was not caused by the volunteer operating a motor vehicle, vessel, aircraft, or other vehicle for which the [s]tate requires the operator or owner of the vehicle, craft, or vessel to—(A) possess an operator's license; or (B) maintain insurance." 42 U.S.C. § 14503 (a).

The protections of 42 U.S.C. § 14503, however, are subject to a number of exemptions and exceptions. Nonprofit organizations that employ volunteers enjoy an exemption from the act if the organization seeks to bring suit against the volunteer. 42 U.S.C. § 14503 (b). States also enjoy an exemption if they have a state law that: (1) requires adherence to risk management procedures; (2) holds an organization or entity liable for its volunteers to the same extent that an employer would be liable for its employee; (3) allows liability if the civil action is brought by an officer of state or local government pursuant to state or local law; or (4) allows liability if a nonprofit organization or governmental entity provides a financially secure source of recovery for those who suffer harm as a result of a volunteer's actions on behalf of the organization or entity. 42 U.S.C. § 14503 (d). Moreover, there are exceptions to the limitations on liability if the conduct of the volunteer: (1) constituted a crime of violence or act of international terrorism; (2) constituted a hate crime; (3) involves a sexual offense for which the defendant has been convicted; (4) involves misconduct in violation of federal

or state civil rights; or (5) occurred while the volunteer was under the influence of alcohol or drugs. 42 U.S.C. § 14503 (f) (1).

Additionally, in those instances where either an exception or exemption applies and a civil action may be brought against a volunteer, punitive damages can be sought if "the claimant establishes by clear and convincing evidence that the harm was proximately caused by an action of such volunteer which constitutes willful or criminal misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed." 42 U.S.C. § 14503 (e) (1). Moreover, "[e]ach defendant who is a volunteer, shall be liable only for the amount of noneconomic loss allocated to that defendant in direct proportion to the percentage of responsibility of that defendant . . . with respect to which that defendant is liable. . . ." 42 U.S.C. § 14504 (b) (1).

Similar to 42 U.S.C. § 14503, under § 52-557m, a volunteer must be acting within the scope of his duties, and the conduct must not be caused by reckless, wilful or wanton misconduct. Section 52-557m does not, however, contain any of the exceptions or exemptions found in the act. Thus, we interpret § 52-557m to provide greater protections to this particular kind of volunteer, namely, a director, officer or trustee of a nonprofit organization, than the act. Because § 52-557m "provides additional protection from liability relating to . . . any category of volunteers in the performance of services for a nonprofit organization"; 42 U.S.C. § 14502 (a); it is not preempted by the act. Accordingly, the court correctly determined that Becker was statutorily immune from suit and granted the motion for summary judgment on count two of the plaintiff's second amended complaint.

The judgment is affirmed.

In this opinion the other judges concurred.