******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAWN CHARLES *v.* DENISE MITCHELL ET AL.
(AC 36461)

DiPentima, C. J., and Alvord and Pellegrino, Js.

*Argued February 10—officially released June 23, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Schuman, J.)

*Jonathan Perkins*, with whom was *Wendi Kowarik*, for the appellant (plaintiff).

*Daniel J. Krisch*, with whom, on the brief, was *Scott S. McKessy*, for the appellee (defendant John Sitaras).

*Opinion*

PELLEGRINO, J. In this premises liability action, the plaintiff, Dawn Charles, appeals from the trial court's denial of her motions to reargue and the summary judgment rendered in favor of the defendant landlord, John Sitaras.[1] On appeal, the plaintiff claims that the court improperly concluded as a matter of law that a landlord who is aware of the dangerous propensities of a dog being kept by a tenant on the landlord's property may not be liable for injuries sustained by a nontenant who is bitten by the dog beyond the boundaries of the landlord's property. We affirm the judgment of the trial court.

The court's memorandum of decision reveals the following undisputed facts and procedural history. The defendant owned a multifamily residence located at 6-12 Woodlawn Circle in East Hartford. In October, 2010, the defendant and Denise Mitchell entered into a lease agreement for the apartment located at 6 Woodlawn Circle. The lease agreement prohibited ownership of a dog by the tenant. Mitchell is the owner of a mixed breed pit bull dog. From the inception of the lease or shortly thereafter, the defendant knew that Mitchell had a dog living in her apartment. The defendant did not give Mitchell permission to keep a dog in the apartment, but took no action against her for having one. In May, 2011, the defendant learned that the dog had attacked the visiting granddaughter of Robin Viveiros, who resided at 12 Woodlawn Circle, while the granddaughter was playing in Viveiros' yard. Thereafter, on the evening of June 15, 2011, the plaintiff, who is not a tenant of the defendant, was walking on Woodlawn Circle. The plaintiff was accompanied by her two sisters, Claudette Leslie and Dotlyn Johnson. Mitchell's dog escaped from her apartment, ran onto the public street in front of 2 Woodlawn Circle, knocked the plaintiff down, and bit her on her hip, arm, elbow, and face, causing injuries. The defendant does not own the property located at 2 Woodlawn Circle.

On January 31, 2012, the plaintiff filed a complaint alleging, inter alia, that injuries and damages sustained by her as a result of the June 15, 2011 incident involving Mitchell's dog were caused by the negligence of the defendant.[2] On July 1, 2013, the defendant filed a motion for summary judgment pursuant to Practice Book § 17-44, et seq. In an accompanying memorandum of law in support of that motion, the defendant argued in relevant part that there was no genuine issue of material fact that the dog bite occurred off of the premises owned or controlled by the defendant and, accordingly, under a common-law theory of premises liability, he could not be liable for the resulting injuries to the plaintiff. The plaintiff advanced two theories of premises liability against the defendant: (1) under § 379A of the Restatement (Second) of Torts,[3] and (2) under a com-

mon-law theory which would extend liability to a landlord who is not an owner or keeper of the dog, for harm caused by a tenant's dog who attacks a nontenant who is standing "just over the [landlord's] property line at the time [the nontenant] is bitten."

On October 23, 2013, the court, *Schuman, J.*, granted the defendant's motion for summary judgment and rendered judgment accordingly. The court issued a memorandum of decision in which it rejected the plaintiff's first argument, noting that "even if the Restatement theory applied to a dog bite case, the available evidence in the present case does not support the theory."[4] Similarly, the court was not persuaded by the arguments advanced by the plaintiff under a common-law theory of premises liability. The court reasoned that landlords have a common-law duty "to use reasonable care to maintain in a reasonably safe condition those areas of their premises over which they exercise control." (Internal quotation marks omitted.) The court recognized, however, that this duty does not extend to "uncontrolled land such as neighboring property or public lands." (Internal quotation marks omitted.) Because it remained undisputed that the attack took place off of the defendant's premises, the court concluded that the plaintiff could not prevail under a common-law theory of premises liability as a matter of law.

On November 8, 2013, the plaintiff filed a motion to reargue the decision of the court granting the defendant's motion for summary judgment (first motion to reargue), which the court denied on December 3, 2013. On December 4, 2013, the plaintiff filed a motion to reargue the denial of her first motion to reargue (second motion to reargue). On December 16, 2013, the court denied the plaintiff's second motion to reargue. Thereafter, on December 30, 2013, the plaintiff filed a notice of intent to appeal from the decision of the court granting summary judgment and its subsequent denial of both motions to reargue. See Practice Book § 61-5 (a).[5] On January 6, 2014, the defendant objected to the plaintiff's notice of intent to appeal.

On January 21, 2014, the plaintiff filed the present appeal. The appeal form filed by the plaintiff indicates that she appeals from the "court's ruling on defendant's Motion for Summary Judgment and on plaintiff's Motions for Reargument." Our careful review of the plaintiff's appellate brief, however, reveals that she has challenged only the legal issue involved in the court's granting of summary judgment. The plaintiff does not analyze, or even refer to, the court's denial of her two motions to reargue. Accordingly, we will consider her claim solely as a challenge to the court's granting of summary judgment.

I

On appeal, the defendant raises a challenge to the

timeliness of the plaintiff's appeal from the court's granting of summary judgment. The defendant raises this issue for the first time in his appellate brief, having not earlier moved to dismiss as untimely any portion of the plaintiff's appeal. See Practice Book § 66-8. The defendant argues that, because the plaintiff did not timely appeal from the summary judgment ruling, the sole issue before this court is whether the court abused its discretion in denying the plaintiff's first motion to reargue. Specifically, the defendant contends that where an appeal is timely only as to the denial of a motion that would "render the judgment . . . ineffective" under Practice Book § 63-1, our appellate courts will review only the denial of the § 63-1 motion and not the underlying judgment. At oral argument before this court, the plaintiff acknowledged that her appeal was untimely, but urged this court to nevertheless consider whether summary judgment was properly granted because the defendant did not file a motion to dismiss the appeal pursuant to Practice Book § 66-8.

Initially, we address the defendant's argument that we should decline to review the appeal insofar as it was taken from the court's granting of summary judgment. For the reasons that follow, we agree that the plaintiff did not timely appeal from the court's granting of summary judgment rendered on October 23, 2013. Although the statutory time period for filing an appeal commences with the notice of a judgment; Practice Book § 63–1 (a); "[i]f a motion is filed within the appeal period that, if granted, would render the judgment . . . ineffective . . . a new twenty day period . . . for filing the appeal shall begin on the day that notice of the ruling is given on the last such outstanding motion . . . ." Practice Book § 63–1 (c) (1). Furthermore, our rules of practice expressly characterize "reargument of the judgment or decision" as a "[motion] that, if granted, would render a judgment . . . ineffective . . . ." Practice Book § 63–1 (c); see also Practice Book § 11–11 (motion to reargue may extend appeal period). Our Supreme Court has noted that "a new appeal period commences when the trial court issues a decision on a motion to reargue." *Nelson* v. *Dettmer*, 305 Conn. 654, 676, 46 A.3d 916 (2012).

Here, the time period in which to appeal from the court's granting of summary judgment began to run on October 23, 2013, the date of issuance of the judgment. Under § 63-1 (c) (1), the filing of the first motion to reargue tolled the appeal period, and a new twenty day appeal period in which the plaintiff could appeal from the grant of summary judgment and the denial of the first motion to reargue arose when the court denied the first motion to reargue on December 3, 2013. The plaintiff's appeal from these rulings, filed on January 21, 2014, was therefore untimely.

Having determined that the plaintiff's appeal from

the court's granting of summary judgment was filed late, we now consider whether we will nevertheless exercise our discretion to reach the merits of the plaintiff's claim. Practice Book § 63-1 (a) provides in relevant part: "Unless a different time period is provided by statute, an appeal must be filed within twenty days of the date notice of the judgment or decision is given. . . ." Our appellate courts have recognized that the twenty day time limitation imposed by § 63-1 is not subject matter jurisdictional and, accordingly, we have discretion to hear a late appeal. See *Nicoll* v. *State*, 38 Conn. App. 333, 335–36, 661 A.2d 101 (1995); see also Practice Book § 60-2 (5) (providing that court may order that party, for good cause shown, may file late appeal unless court lacks jurisdiction to allow late filing). "The rationale for this rule is that the twenty day period established by § [63-1] is not a constitutionally or legislatively created condition precedent to the jurisdiction of [our appellate courts]. The source of the authority for the adoption of the rule lies in the inherent right of constitutional courts to make rules governing their procedure. . . . Such time constraints, which are created by the courts, can be waived by the courts." (Citation omitted; internal quotation marks omitted.) *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 763, 628 A.2d 1303 (1993). Although the present appeal was, in part, untimely, the defendant waived any objection on that ground by failing to challenge the timeliness of the appeal until he filed his appellate brief.[6] We, therefore, will consider the merits of the plaintiff's appeal from the court's rendering of summary judgment.

## II

We first set forth the relevant standards that govern our review of a court's decision to grant a defendant's motion for summary judgment. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision

to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Citations omitted; internal quotation marks omitted.) *Himmelstein* v. *Windsor*, 116 Conn. App. 28, 42–43, 974 A.2d 820 (2009), aff'd, 304 Conn. 298, 39 A.3d 1065 (2012).

"The party opposing a motion for summary judgment must present evidence that demonstrates the existence of some disputed factual issue . . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents. . . . The opposing party to a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . A material fact is a fact which will make a difference in the result of the case." (Citations omitted; internal quotation marks omitted.) *Hospital of Central Connecticut* v. *Neurosurgical Associates, P.C.*, 139 Conn. App. 778, 782–83, 57 A.3d 794 (2012).

We begin our analysis with a brief discussion of the relative principles of negligence and premises liability as applicable to landlords. "In a negligence action, the plaintiff must meet all of the essential elements of the tort in order to prevail. These elements are: duty; breach of that duty; causation; and actual injury." *LaFlamme* v. *Dallessio*, 261 Conn. 247, 251, 802 A.2d 63 (2002). "[T]he existence of a duty of care is a prerequisite to a finding of negligence . . . . The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant [breached] that duty in the particular situation at hand. . . . If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." (Internal quotation marks omitted.) *Sweeney* v. *Friends of Hammonasset*, 140 Conn. App. 40, 46–47, 58 A.3d 293 (2013).

"The general rule is that a landlord has a duty reasonably to maintain property over which he exercises control. . . . That duty serves to protect entrants (invitees, licensees, trespassers) and tenants. The degree of care owed to an entrant depends on the entrant's status. . . . The duty does not, however, extend to uncontrolled land such as neighboring property or public lands." (Citations omitted; footnote omitted.) *Stokes* v. *Lyddy*, 75 Conn. App. 252, 260, 815 A.2d 263 (2003).

Our Supreme Court has explained further that, "[as] a matter of well settled common law, [i]t is, of course,

the duty of a landlord to use reasonable care to keep in a reasonably safe condition the parts of the premises over which he reserves control. . . . The ultimate test of the duty is to be found in the reasonable foreseeability of harm resulting from a failure to exercise reasonable care to keep the premises reasonably safe. . . . The prevailing common-law conception of the dangerous conditions implicated in this duty, moreover, certainly is capacious enough readily to encompass threats from animals, including known vicious dogs. . . . [A] landlord, in exercising the closely analogous duty to alleviate dangerous conditions in areas of a premises over which it retains control, must take reasonable steps to alleviate the dangerous condition created by the presence of a dog with known vicious tendencies in the common areas of the property." (Citations omitted; internal quotation marks omitted.) *Giacalone* v. *Housing Authority*, 306 Conn. 399, 407–408, 51 A.3d 352 (2012). Guided by these principles, we turn to the specifics of the plaintiff's appeal.

As noted, the plaintiff claims that the court improperly concluded as a matter of law that a landlord who is aware of the dangerous propensities of a dog being kept by a tenant on the landlord's property may not be liable for injuries sustained by a nontenant who is bitten by the dog beyond the boundaries of the landlord's property. Specifically, the plaintiff argues that a landowner who is aware of a dangerous condition on his land, including dangers posed by vicious dogs, may be held liable under a negligence theory for resulting damage or injuries that occur off of the landowner's property so long as the resulting harm was reasonably foreseeable. The defendant responds that the court correctly held that the defendant did not have a duty to prevent his tenant's dog from harming a nontenant beyond the boundaries of his property, an area over which he did not exercise control. The defendant further argues that the court properly granted summary judgment in the present case because it is undisputed that the attack occurred off the premises owned by the defendant. We agree with the defendant.

After a careful review of the record, viewing the facts in the light most favorable to the plaintiff, we conclude that the trial court properly granted the defendant's motion for summary judgment. As we have stated, summary judgment is appropriate when there is no genuine issue of material fact. A material fact is one that will make a difference in the case. *Fiorelli* v. *Gorsky*, 120 Conn. App. 298, 305, 991 A.2d 1105, cert. denied, 298 Conn. 933, 10 A.3d 517 (2010). The issue in the present case is whether the landlord was under a duty to prevent the alleged harm. Therefore, to answer the question presented, we must determine whether a genuine issue of material fact exists as to whether the incident occurred at a location over which the defendant exercised control.

The defendant, as the moving party, discharged his initial burden on summary judgment by showing the absence of any genuine issue of material fact which, under applicable principles of substantive law, entitles him to a judgment as a matter of law. In his affidavit supporting the motion for summary judgment, the defendant averred that he "owned a multifamily dwelling located at 6-12 Woodlawn Circle in East Hartford, Connecticut in June of 2011." The parties do not dispute this fact.

During the summary judgment proceedings, the defendant presented the deposition testimony of the plaintiff and her two sisters. The defendant's counsel asked the plaintiff whether she "[had] any reason to disagree with what is reflected on the police report and the animal bite report." The plaintiff responded: "No." Leslie was similarly asked by the defendant's counsel whether she had any reason to disagree with the information in the police report, particularly with respect to the location of the incident. Leslie responded: "No." Leslie testified further that the incident occurred on the sidewalk or street in front of "the next house" after the property owned by the defendant. Similarly, the defendant's counsel asked Johnson during her deposition if she had any reason to disagree with the following information: "The date of the incident is June 15, 2011. . . . [The] incident location is listed as 2 Woodlawn Circle in East Hartford, Connecticut." Johnson responded: "No." Johnson also testified that the dog ran out from a house that was behind her, and the attack occurred on the sidewalk in front of the next house on the left. In addition, the defendant introduced as an exhibit the East Hartford Police Department incident report (police report). In that report, the investigating officer indicated that "a dog belonging to . . . Mitchell broke free from its cable, ran down the road, and bit [the plaintiff] in front of 2 Woodlawn Circle." The police report further provides that the "[i]ncident [l]ocation" was 2 Woodlawn Circle.

To oppose the motion for summary judgment successfully, the plaintiff was required to recite specific facts which contradict those stated in the defendant's affidavits and documents. See *Hospital of Central Connecticut* v. *Neurosurgical Associates, P.C.*, supra, 139 Conn. App. 783. In her memorandum of law in support of her objection to the defendant's motion for summary judgment, the plaintiff argued that a genuine issue exists as to where the attack occurred because neither she nor her sisters could identify the site of the attack on a map provided by the defendant during their depositions.[7]

The inability of Leslie and Johnson to locate where the incident occurred on a map does not contradict their deposition testimony that the attack occurred on the street or sidewalk down the street from the defen-

dant's property. It is undisputed that both of the plaintiff's sisters affirmed the information in the police report that the attack occurred in front of 2 Woodlawn Circle, a property which is not owned by the defendant. Further, the plaintiff does not dispute on appeal that the attack occurred off of the property owned by the defendant. In her appellate brief, the plaintiff raises the issue of whether a landlord may evade liability for harm when he negligently fails to take action to alleviate a known dangerous condition and the resulting harm from that negligence occurs "on adjoining land," "off his property," or "just over the [landlord's] property line." Because the defendant did not owe a duty of care to the plaintiff beyond the boundaries of his premises, the court properly found that the defendant was entitled to judgment as a matter of law.

It is clear from our review of the record that the conclusion reached by the court—that the deposition testimony of the plaintiff and her two sisters does not create an issue of fact that is "genuine" as to the issue of control and, therefore, that the defendant was entitled to judgment as a matter of law—is legally and logically correct and is supported by the facts set out in the record. Accordingly, we conclude that the court properly granted the defendant's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Denise Mitchell is also a defendant in this case. Because she is not a party to this appeal, we refer in this opinion to Sitaras as the defendant.

[2] In her complaint, the plaintiff also alleged that the defendant was liable under our dog bite statute, General Statutes § 22-357. Section 22-357 (a) (Rev. to 2013) provides in relevant part: "If any dog does any damage to either the body or property of any person, the owner or keeper . . . shall be liable for such damage, except when such damage has been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog. If a minor, on whose behalf an action under this section is brought, was under seven years of age at the time the damage was done, it shall be presumed that such minor was not committing a trespass or other tort, or teasing, tormenting or abusing such dog, and the burden of proof thereof shall be upon the defendant in such action." Public Acts 2013, No. 13-223 amended the statute to provide that a plaintiff may recover for damages to a companion animal, as defined in General Statutes § 22-351a.

Thereafter, the defendant argued that because he was not the "owner or keeper" of the dog, he could not be liable under § 22-357 for injury sustained by the plaintiff. After the defendant filed his motion for summary judgment, the plaintiff abandoned her action against the defendant under § 22-357 and under any negligence theory premised upon the assumption that the defendant was an "owner or keeper" of the dog.

[3] Section 379A of the Restatement (Second) of Torts provides: "A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession if, but only if, (a) the lessor at the time of the lease consented to such activity or knew that it would be carried on, and (b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken." 2 Restatement (Second), Torts § 379A (1965).

[4] The plaintiff's argument under § 379A was premised upon the fact that the dog was a mixed breed pit bull. Although the court "[accepted] the notion . . . that a pit bull dog is known for its ill-tempered and ferocious

tendencies," the plaintiff did not present any evidence that the defendant knew the breed of the dog at the time he first saw it and, specifically, that he knew that the dog was a mixed breed pit bull. Because the plaintiff did not present any evidence that the defendant knew of the dog's dangerous propensities at that time, she could not defeat summary judgment under this theory. On appeal, the plaintiff has failed to brief her claim that the defendant is liable under § 379A and we therefore consider it abandoned. See, e.g., *Roby* v. *Connecticut General Life Ins. Co.*, 166 Conn. 395, 398 n.1, 349 A.2d 838 (1974).

[5] Practice Book § 61-5 (a) provides in relevant part: "An appeal of a judgment described in Sections 61-2 or 61-3 may be deferred until the judgment that disposes of the case for all purposes and as to all parties is rendered. In the following two instances only, a notice of intent to appeal must be filed in order to defer the taking of an appeal until the final judgment that disposes of the case for all purposes and as to all parties is rendered:

"(1) when the deferred appeal is to be taken from a judgment that not only disposes of an entire complaint, counterclaim or cross complaint but also disposes of all the causes of action brought by or against a party or parties so that that party or parties are not parties to any remaining complaint, counterclaim or cross complaint; or

"(2) when the deferred appeal is to be taken from a judgment that disposes of only part of a complaint, counterclaim, or cross complaint but nevertheless disposes of all causes of action in that pleading brought by or against a particular party or parties.

"In the event that the party aggrieved by a judgment described in (1) or (2) above elects to defer the taking of the appeal until the disposition of the entire case, the aggrieved party must . . . within twenty days after issuance of notice of the judgment described in (1) or (2) above, file in the trial court a notice of intent to appeal the judgment . . . .

"When such a party has filed a notice of objection to the deferral of the appeal, the appeal shall not be deferred, and the appellant shall file the appeal within twenty days of the filing of such notice of objection."

[6] Because the defendant did not file a motion to dismiss, this court did not hear any arguments from the plaintiff as to whether she had good cause for filing the appeal almost one month late. See Practice Book § 60-2 (5).

[7] The trial court did not address two additional arguments advanced by the plaintiff in her memorandum of law in support of her objection to the defendant's motion for summary judgment. First, the plaintiff argued that the testimony of the responding animal control officer as to the location of the incident was unreliable because it was based upon information relayed to him by the communications department of the East Hartford police and the officer who responded to the scene. We are not persuaded by this argument because the animal control officer responded to the incident and made his own evaluation at the scene.

Second, she contends that her "[testimony] that she was walking on Woodlawn Circle in front of 6 Woodlawn Circle" presents a triable issue of fact as to where the attack occurred. Our review of the plaintiff's deposition testimony does not reveal such a statement. Accordingly, we are not persuaded by these arguments.